## <u>COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

Subject to Court approval by the United States District Court for the Northern District of Ohio, Defendant Midwest Medical Transport Company, LLC and Plaintiff Megan Reust individually, and on behalf of the Eligible Settlement Participants (defined below), voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all claims and issues as set forth more fully below.

## <u>DEFINITIONS</u>

1.      "Action" means the civil action in the United States District Court for the Northern District of Ohio, captioned *Megan Reust v. Midwest Medical Transport Company, LLC*, Case No. 1:20-cv-01548.

2.      "Claimant" means Representative Plaintiff, Opt-In Plaintiff and each Eligible Settlement Participant who completes, signs, and submits a valid and timely Claim Form. Representative Plaintiff and the Opt-In Plaintiff are not required to submit a Claim Form to receive their Settlement Award checks or any other payment under this Agreement.

3.      "Claim Form" means the form approved by the Parties' Counsel, and subject to Court approval, that each Eligible Settlement Participant, except for the Representative Plaintiff and the Opt-In Plaintiff, must sign, complete in full, and timely submit within forty-five (45) days following mailing of the Notice of Settlement to recover a Settlement Award.

4.      "Court" means the United States District Court for the Northern District of Ohio.

5.      "Covered Period" refers to the period from January 1, 2019 through December 31, 2020.

6.    "Defendant" means Midwest Medical Transport Company, LLC, including its officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities.

7.    "Defendant's Counsel" means Jeffrey Miller and Russell Rendall of Brennan, Manna & Diamond, LLC.

8.    "Effective Date" means the first day after the date on which the Court approves this Settlement.

9.    "Eligible Settlement Participants" means the current and former hourly, non-exempt Ohio employees of Defendant during the covered period, listed by employee number in the attached Exhibit A.

10.    "Global Settlement Fund" means the account established by the Settlement Administrator as a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq.

11.    "Net Settlement Amount" means the amount available for individual Settlement Awards, after deducting all attorneys' fees, costs, expenses, and Service Award.

12.    "Notice of Settlement" means the form approved by the Parties' Counsel, and subject to Court approval, that will be sent to each Eligible Settlement Participant which will explain this Settlement and the claims process and provides each Eligible Settlement Participant with the amount of his or her Settlement Award.

13.    "Opt-In Plaintiff" means the individual who, as of the date of this Agreement, submitted a Consent to Join form, which was filed with the Court.

14.    "Parties" means the Representative Plaintiff and the Defendant.

15.     "Plaintiffs' Counsel" means Jeffrey Moyle and Hans Nilges of Nilges Draher LLC.

16.     "Released Claims" means any and all claims of Claimants against the Released Parties that are, or were, in any way, related to the factual allegations in the Action, including claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on, or before, the Effective Date, that were, or could have been, asserted under the FLSA or any applicable state wage and hour laws relating to unpaid and/or untimely payment of overtime compensation, including any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, Settlement Administrator Costs, and Service Awards.

17.     "Released Parties" means Defendant and any of its officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors.

18.     "Representative Plaintiff" means Megan Reust.

19.     "Settlement" means the Parties' resolution of the Action set forth in this Agreement.

20.     "Settlement Administrator" means Analytics, LLC.

21.     "Settlement Administrator Costs" means all settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the distribution of the Net Settlement Amount and tax treatment and reporting of Settlement Awards, preparation of tax

returns (and the taxes associated with such tax returns as defined below), calculating Settlement Awards, and any other related duties.

22.    "Settlement Award" means the amount of the Net Settlement Amount that will be paid out of the Global Settlement Fund to each Eligible Settlement Participant who becomes a Claimant, which shall be his or her *pro rata* share of the Net Settlement Amount based on the number of workweeks worked by the Eligible Settlement Participant during the Covered Period in comparison to the total number of workweeks worked by all Eligible Settlement Participants during the Covered Period.

23.    "Service Award" means the payment made from the Global Settlement Fund to Representative Plaintiff for her services in bringing and prosecuting the Action, and in consideration for Representative Plaintiff's Released Claims as defined below.

24.    "Total Settlement Amount" means the gross settlement amount of $80,000.  The Total Settlement Amount is the sole and maximum payment by the Defendant and includes (1) all Settlement Awards (defined below); (2) any Service Award approved for Representative Plaintiff; (3) all Plaintiffs' Counsel's attorneys' fees and litigation expenses approved by the Court; and (4) the Settlement Administrator's costs.  The Total Settlement Amount does not include any required employer contributions with respect to any portions of the Settlement Awards and the Service Award treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Total Settlement Amount.

## BACKGROUND AND RECITALS

25.     On July 14, 2020, Representative Plaintiff commenced the Action and asserted claims against Defendant on behalf of herself and others similarly situated under the Fair Labor Standards Act (the "FLSA") and the Ohio Minimum Fair Wage Standards Act "(OMFWSA").

26.     Defendant denies all of Representative Plaintiff's material allegations, and denies liability for the claims asserted in the Action.

27.     As of the date of this agreement, one additional Opt-In Plaintiff submitted a Consent to Join form, which has been filed with the Court.

28.     To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in settlement negotiations and reached the proposed Settlement in this matter after engaging in good-faith bargaining.

29.     The Parties agree that the Settlement is fair, adequate, reasonable, and in the best interest of the Eligible Settlement Participants based on the known facts and circumstances.

30.     The Parties agree that the consideration given to support their respective obligations under this Agreement is adequate and sufficient in all respects and the Parties have not received or been made any promise, inducement, or concession that is not set forth in this Agreement.

31.     The purpose of this Agreement is to fully and finally settle all Released Claims that Claimants may have against Defendant and the Released Parties.

## DENIAL OF LIABILITY

32.     Defendant denies liability or wrongdoing of any kind associated with the claims alleged in the Action. Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released

Parties, for any purpose, and under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

## CERTIFICATION OF THE COLLECTIVE

33.     Representative Plaintiff believes that the Action is meritorious based on alleged violations of the FLSA and OMFWSA and is appropriate for treatment as a collective action. Defendant denies that the allegations have merit or that the claims are appropriate for treatment as a collective action. For purposes of this Settlement only, the Parties agree that Representative Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA and agree to conditional certification of the class of Eligible Settlement Participants.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

34.     The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

35.     Upon entry of the Court's final order approving the Settlement, the Action shall be dismissed with prejudice and final judgment shall be entered. The Parties agree to cooperate and take all steps necessary to effectuate the dismissal of the Action with prejudice.

## ATTORNEYS' FEES AND COSTS

36.     Plaintiffs' Counsel will seek an order from the Court approving the payment of $23,000.00 to Plaintiff's Counsel, representing payment of $21,114.85 for attorneys' fees and $1,885.15 for costs and expenses incurred by Plaintiff's Counsel.  Defendant will not contest this application. Any attorneys' fees and litigation expenses approved by the Court will be paid from the Global Settlement Fund. The Settlement Administrator will wire Plaintiffs' Counsel's Court-approved attorneys' fees and litigation expenses **twenty-one (21) days** after the Effective Date.

## SERVICE AWARD

37.     Plaintiffs' Counsel will seek an Order from the Court approving a Service Award for the Representative Plaintiff in the amount of $2,000.00.   Defendant will not contest this application.  The Service Award approved by the Court will be paid from the Global Settlement Fund.  For tax purposes, the Parties agree the Service Award will be considered taxable wage income subject to ordinary payroll withholdings under federal and state law, and will be reported to Representative Plaintiff on an IRS Form W-2. The Settlement Administrator will mail Representative Plaintiff's Court-approved Service Award **twenty-one (21) days** after the Effective Date.

## SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES

38.     The Parties agree to retain a Settlement Administrator responsible for:

      a.     Establishing the Global Settlement Fund;

b.      Issuing all funds from the Global Settlement Fund;

c.      Determining and finalizing the Settlement Awards and the tax withholding amounts and employer payroll tax amounts for Claimants, as applicable;

d.      Preparing, printing, and disseminating the Notice of Settlement to all Eligible Settlement Participants;

e.      Processing and maintaining a record of all Eligible Settlement Participants that opt-in to the Settlement and reporting same to the Parties' Counsel;

f.      Promptly apprising the Parties' Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their Counsel, and copying the Parties' Counsel on material correspondence;

g.      Mailing Settlement Award checks to all Claimants;

h.      Wiring Plaintiffs' Counsel's attorneys' fees and litigation expenses;

i.      Mailing the Service Award to Representative Plaintiff;

j.      Reissuing and remailing Settlement Award checks to Claimants who do not receive or misplace their Settlement Award checks;

k.      Mailing reminder postcards to Claimants who have not cashed their Settlement Award checks **sixty (60) days** before the check void date and again **thirty (30) days** before the check void date;

l.      Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Claimant;

m.      Ascertaining current addresses for each Notice of Settlement and Settlement Award check returned as undeliverable;

n.　　　Referring to Plaintiffs' Counsel all inquiries by Eligible Settlement Participants the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

o.　　　Promptly notifying the Parties' Counsel of any material requests or communications made by any Eligible Settlement Participant who receives the Notice of Settlement;

p.　　　Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications and attempted communications with Eligible Settlement Participants, and providing the Parties' Counsel with weekly reports regarding the same;

q.　　　Confirming, in writing to the Parties' Counsel its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and

r.　　　Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

39.　　Settlement Administrator Costs shall be paid from the Global Settlement Fund.

## <u>SETTLEMENT ADMINISTRATION TIMELINES</u>

40.　　Within **seven (7) days** of the Effective Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund.

41.     Within **fourteen (14) days** of the Effective Date, Defendant shall provide the Settlement Administrator with an Excel spreadsheet listing the names, social security numbers, last known addresses, and dates of employment for the Eligible Settlement Participants. The Settlement Administrator shall attempt to confirm the accuracy of the Eligible Settlement Participants' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement to any updated address obtained therefrom.

42.     Within **fourteen (14) days** of the Effective Date, Plaintiffs' Counsel shall provide the Settlement administrator with the name and last known address of the Opt-In Plaintiff.  The Settlement Administrator shall confirm that the Opt-In Plaintiff is included in the list of Eligible Settlement Participants provided by Defendant.

43.     Within **fourteen (14) days** of the Effective Date, Defendant shall deposit $80,000.00 into the interest-bearing bank account opened by the Settlement Administrator.

44.     Within **twenty-eight (28) days** of the Effective Date, the Settlement Administrator will calculate the Settlement Award for each Eligible Settlement Participant.

45.     Within **forty (40) days** of the Effective date, the Settlement Administrator shall mail to all Eligible Settlement Participants, the Notice of Settlement, Claim Form, and an enclosed, postage-paid return envelope (the "Mailing Date"). If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Eligible Settlement Participant through other reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement to such person.

46.     The Settlement Administrator shall mail reminder postcards to Claimants who have not cashed their Settlement Award checks **sixty (60) days** before the check void date and again **thirty (30) days** before the check void date.

## THE CLAIMS PROCESS AND PAYMENT OF CLAIMANT'S SETTLEMENT AWARDS

47.     Each Eligible Settlement Participant shall have **forty-five (45) days** from the Mailing Date to submit his or her signed and completed Claim Form, and any such submission must be postmarked, e-mailed, or facsimiled on, or before, the forty-fifth (45th) day from Mailing Date.  The Representative Plaintiff and the Opt-In Plaintiff are not required to submit a Claim Form to receive their Settlement Award checks or any other payment under this Agreement.

48.     Within **seventy-five (75) days** from the Mailing Date, the Settlement Administrator shall mail to Claimants their Settlement Awards. If possible, the Settlement Administrator will issue each Claimant one single check representing the total amount of his or her Settlement Award by combining the wage and non-wage portions of his or her Settlement Award.

49.     The Settlement Administrator will provide the Parties' Counsel with a list of all of the Claimants and their Settlement Awards no later than **seven (7) days** after the Settlement Awards are mailed to Claimants.

## FILING THE CLAIM FORMS

50.     Defendant may, at its option, file with the Court a list of Claimants within **fourteen (14) days** of the date that the Settlement Awards are mailed to the Claimants.

## GLOBAL SETTLEMENT FUND AND TAXES

51.     The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas.

Reg. Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

52.     The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

53.     The Parties recognize the wage and non-wage awards to the Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendant will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employer's share of payroll taxes related to Settlement Award payments treated as wage income.

54.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in

connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

55.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

## TAX TREATMENT OF THE SETTLEMENT AWARDS

56.     For tax purposes, the Parties agree Settlement Awards will be allocated as: (a) 50 percent taxable, wage income subject to ordinary payroll withholdings under federal and state law, which will be reported on IRS Form W-2; and (b) 50 percent taxable, non-wage income from which no withholdings will be made, which will be reported on IRS Form 1099.  Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

## REMAINDER OF THE GLOBAL SETTLEMENT FUND

57.     Any funds from the Global Settlement Fund that are not distributed under the terms of this Agreement shall not be redistributed among the Claimants, but shall revert back to Defendant, and this Agreement shall remain binding on all of the Claimants.

58.     All Settlement Award checks that are not negotiated by a Claimant within **one-hundred eighty (180) days** of the of date issuance or reissuance, as noted on the Settlement Award checks mailed by the Settlement Administrator to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, any such funds shall revert back to Defendant, and this Agreement shall remain binding on all of the Claimants.

## RELEASE OF CLAIMS BY THE REPRESENTATIVE PLAINTIFF AND CLAIMANTS

59.     In consideration of her eligibility for her Service Award, the Representative Plaintiff, on behalf of herself and her heirs and assigns, hereby forever releases and discharges, through the date of execution of this respective release, the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the date that the Court enters final approval of the Settlement, including but not limited to those claims which: (a) were pled in the Action at any time; and/or (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination,

retaliation, harassment, or wrongful discharge, and (v) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, and equitable relief ("Representative Plaintiff's Released Claims").  For the avoidance of doubt, this is a complete and general release of all possible claims to the maximum extent allowed under the law.  Representative Plaintiff's Released Claims do not include any workers' compensation claims, claims for unemployment benefits or claims that cannot be released by law.

60.      In consideration for their Settlement Award, Representative Plaintiff and each Claimant forever and fully releases the Released Parties from the "Released Claims."

61.      Further, in consideration for the payment of their attorneys' fees and costs, Representative and Claimants hereby release all claims, causes of action, demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses against the Released Parties arising from or related to the Action, including in relation to any inquiry, research and settlement discussions they conducted and the Complaint. Claimants agree that they are not entitled to any other payments, compensation, wages, benefits, reimbursements, or distributions from Defendant or any Released Parties arising out of their employment with Defendant during the Covered Period.

## CONSTRUCTION, INTERPRETATION AND MODIFICATION

62.      This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and it shall supersede all prior and

contemporaneous negotiations between the parties.  This Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

63.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

64.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

65.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, and shall be subject to the continuing jurisdiction of the Court.  The Parties agree that if either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred in enforcing the terms and conditions contained herein.

66.     If any provision of this Agreement, except the Release, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect to the extent the effect of this Agreement, as well as the obligations of the Parties, remains materially the same.

67.     This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

68.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit the Released Parties; likewise, this Agreement shall be binding upon the Representative Plaintiff's and the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

## CONTINUING JURISDICTION

69.     The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| DATED: | DEFENDANT |
|---|---|
| | By: _____ |
| | Its: _____ |

| DATED: | REPRESENTATIVE PLAINTIFF |
|---|---|
| | _____ |

**Exhibit A**

**Eligible Settlement Participants**

| Employee Number | Employee Number | Employee Number |
|---|---|---|
| 105236 | 106045 | 106151 |
| 105735 | 106046 | 106152 |
| 105743 | 106047 | 106153 |
| 105744 | 106054 | 106155 |
| 105745 | 106064 | 106158 |
| 105746 | 106066 | 106159 |
| 105747 | 106071 | 106160 |
| 105748 | 106073 | 106161 |
| 105749 | 106074 | 106162 |
| 105753 | 106076 | 106163 |
| 105766 | 106077 | 106165 |
| 105806 | 106081 | 106166 |
| 105808 | 106083 | 106167 |
| 105809 | 106088 | 106168 |
| 105811 | 106089 | 106169 |
| 105828 | 106090 | 106170 |
| 105839 | 106091 | 106171 |
| 105847 | 106094 | 106174 |
| 105876 | 106096 | 106175 |
| 105879 | 106097 | 106176 |
| 105902 | 106098 | 106177 |
| 105907 | 106099 | 106178 |
| 105908 | 106100 | 106179 |
| 105910 | 106101 | 106180 |
| 105915 | 106115 | 106181 |
| 105927 | 106116 | 106192 |
| 105929 | 106118 | 106193 |
| 105930 | 106119 | 106195 |
| 105939 | 106120 | 106196 |
| 105970 | 106122 | 106197 |
| 105975 | 106124 | 106198 |
| 105986 | 106125 | 106199 |
| 105996 | 106126 | 106200 |
| 106009 | 106127 | 106201 |
| 106010 | 106128 | 106202 |
| 106031 | 106130 | 106203 |
| 106040 | 106148 | 106204 |
| 106042 | 106149 | 106205 |
| 106043 | 106150 | 106206 |

| Employee Number | Employee Number | Employee Number |
|---|---|---|
| 106207 | 106266 | 106323 |
| 106209 | 106267 | 106324 |
| 106211 | 106268 | 106325 |
| 106212 | 106269 | 106331 |
| 106213 | 106270 | 106332 |
| 106217 | 106271 | 106333 |
| 106218 | 106274 | 106340 |
| 106219 | 106275 | 106341 |
| 106220 | 106276 | 106342 |
| 106221 | 106277 | 106343 |
| 106222 | 106278 | 106344 |
| 106223 | 106279 | 106345 |
| 106224 | 106280 | 106346 |
| 106225 | 106281 | 106347 |
| 106226 | 106282 | 106348 |
| 106227 | 106283 | 106350 |
| 106228 | 106284 | 106351 |
| 106229 | 106285 | 106354 |
| 106230 | 106286 | 106355 |
| 106231 | 106287 | 106356 |
| 106232 | 106288 | 106357 |
| 106233 | 106293 | 106362 |
| 106234 | 106294 | 106363 |
| 106235 | 106295 | 106369 |
| 106241 | 106299 | 106370 |
| 106242 | 106301 | 106371 |
| 106243 | 106303 | 106372 |
| 106246 | 106304 | 106373 |
| 106247 | 106305 | 106374 |
| 106248 | 106306 | 106375 |
| 106250 | 106307 | 106377 |
| 106251 | 106308 | 106383 |
| 106252 | 106309 | 106384 |
| 106253 | 106310 | 106386 |
| 106254 | 106312 | 106387 |
| 106255 | 106313 | 106388 |
| 106256 | 106314 | 106389 |
| 106257 | 106315 | 106390 |
| 106258 | 106317 | 106391 |
| 106259 | 106318 | 106399 |
| 106260 | 106319 | 106400 |
| 106265 | 106322 | 106404 |

| Employee Number | Employee Number | Employee Number |
|---|---|---|
| 106405 | 106474 | 106595 |
| 106406 | 106475 | 106599 |
| 106407 | 106488 | 106600 |
| 106408 | 106489 | 106601 |
| 106409 | 106490 | 106603 |
| 106410 | 106491 | 106604 |
| 106411 | 106492 | 106608 |
| 106412 | 106493 | 106609 |
| 106413 | 106494 | 106610 |
| 106419 | 106500 | 106612 |
| 106424 | 106501 | 106614 |
| 106425 | 106502 | 106618 |
| 106426 | 106503 | 106629 |
| 106427 | 106504 | 106630 |
| 106428 | 106505 | 106631 |
| 106429 | 106506 | 106632 |
| 106431 | 106507 | 106633 |
| 106432 | 106508 | 106634 |
| 106435 | 106509 | 106643 |
| 106440 | 106510 | 106649 |
| 106441 | 106511 | 106650 |
| 106442 | 106517 | 106651 |
| 106443 | 106518 | 106652 |
| 106444 | 106519 | 106653 |
| 106445 | 106529 | 106654 |
| 106446 | 106530 | 106655 |
| 106456 | 106531 | 106656 |
| 106457 | 106532 | 106657 |
| 106458 | 106533 | 106666 |
| 106459 | 106534 | 106670 |
| 106460 | 106535 | 106671 |
| 106461 | 106537 | 106674 |
| 106462 | 106538 | 106675 |
| 106463 | 106539 | 106677 |
| 106464 | 106540 | 106678 |
| 106465 | 106541 | 106679 |
| 106468 | 106557 | 106680 |
| 106469 | 106560 | 106681 |
| 106470 | 106573 | 106682 |
| 106471 | 106574 | 106699 |
| 106472 | 106584 | 106700 |
| 106473 | 106585 | 106701 |

| Employee Number | Employee Number | Employee Number |
|-----------------|-----------------|-----------------|
| 106702 | 106795 | 106888 |
| 106704 | 106796 | 106890 |
| 106705 | 106799 | 106892 |
| 106706 | 106810 | 106893 |
| 106708 | 106811 | 106897 |
| 106709 | 106813 | 106898 |
| 106716 | 106814 | 905846 |
| 106717 | 106815 | 905847 |
| 106723 | 106816 | 905849 |
| 106725 | 106817 | 905850 |
| 106726 | 106818 | 905851 |
| 106727 | 106819 | 905852 |
| 106730 | 106824 | 905854 |
| 106731 | 106826 | 905855 |
| 106732 | 106828 | 905856 |
| 106733 | 106829 | 905858 |
| 106734 | 106830 | 905859 |
| 106736 | 106831 | 905860 |
| 106743 | 106832 | 905861 |
| 106744 | 106833 | 905862 |
| 106746 | 106834 | 905863 |
| 106747 | 106835 | 905864 |
| 106749 | 106837 | 905865 |
| 106754 | 106838 | 905866 |
| 106755 | 106839 | 905867 |
| 106756 | 106840 | 905868 |
| 106757 | 106854 | 905870 |
| 106758 | 106855 | 905871 |
| 106761 | 106857 | 905872 |
| 106762 | 106858 | 905873 |
| 106768 | 106859 | 905874 |
| 106776 | 106860 | 905875 |
| 106777 | 106862 | 905876 |
| 106778 | 106863 | 905877 |
| 106780 | 106865 | |
| 106781 | 106867 | |
| 106782 | 106868 | |
| 106783 | 106873 | |
| 106788 | 106877 | |
| 106792 | 106878 | |
| 106793 | 106881 | |
| 106794 | 106886 | |